IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KATHERINE SLIMP,

    **Plaintiff,**

v.                                         CASE NO. 5:14-cv-199-RS-CJK

BAY DISTRICT SCHOOLS,

    **Defendant.**

_____/

## ORDER

    Before me are Defendant's Emergency Motion to Enforce a Negotiated Settlement Agreement (Doc. 10), Defendant's Notice of Filing Proposed Order (Doc. 19), and Plaintiff's Corrected Notice of Filing Proposed Findings of Fact, Conclusions of Law, and Order (Doc. 21).

    In July 2014 Plaintiff, a teacher, sued her employer, Defendant, for sexual harassment. On September 17, Defendant filed an Emergency Motion to Enforce a Negotiated Settlement Agreement (Doc. 10). It argued that the two parties had negotiated a valid settlement agreement whereby Plaintiff would be transferred to a different school and receive $1,000 in cash, and that the court should enforce the

agreement.[1] Plaintiff responded that there was never a valid agreement, and that she did not ever understand that she might be settling her lawsuit. An evidentiary hearing was held October 3, 2010, to determine the facts surrounding the matter.

Based on the evidence produced at the hearing, I make the following findings of fact and conclusions of law. I conclude that a valid settlement agreement existed, and that the agreement should be enforced. The relief requested in Defendant's Emergency Motion to Enforce a Negotiated Settlement Agreement (Doc. 10) is therefore **GRANTED**.

## I.    STANDARD OF REVIEW

A district court has the inherent power to enforce settlement agreements. *Ford v. Citizens & S. Nat. Bank, Cartersville*, 928 F.2d 1118, 1121 (11th Cir. 1991). To do so, the court may hold an evidentiary hearing and make factual determinations. *Id*. Because Defendant is requesting specific enforcement of a contract—an equitable remedy—a jury trial is not necessary on this matter. *Id*.

The determination as to whether a binding settlement agreement was reached by the parties is governed by Florida contract principles using a preponderance of the evidence standard. *Welch v. N. Am. Tank Line, Inc.*, 8:06-CIV-2340-T-17-MAP, 2008 WL 3982394 (M.D. Fla. Aug. 25, 2008), *citing U.S.*

---

[1] The motion also requested attorneys' fees for the cost of bringing the motion. However, because Defendant did not request the fees in its subsequent Proposed Order (Doc. 19), that request is deemed abandoned.

*Fire Insurance v. Caulkins Indiantown Citrus Corp.,* 931 F.2d 744, 749 (11th Cir.1991). Under Florida law, the moving party must demonstrate that the non-movant's attorney had clear and unequivocal authority to enter into the settlement agreement. *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994).

## II.   BACKGROUND AND FACTUAL FINDINGS

### *a.   Background*

Plaintiff Katherine Slimp is a current employee of Defendant Bay District Schools ("School Board" or "Board"), and has been an employee since 2002. (Doc. 18 at 60; Doc. 1-1 at 2). On July 7, 2014, she filed suit against the School Board alleging sexual harassment that occurred in 2009 and 2010 while she was a teacher at the Deane Bozeman School. (Doc. 1-1 at 2). She was subsequently transferred to Everitt Middle School, where she was teaching at the time she filed her lawsuit. (Doc. 1-1 at 3).

On September 5, 2014, as part of a routine reorganization because of over-hiring at certain schools, Slimp volunteered to transfer from her position at Everitt Middle School. (Doc. 18 at 22-24, 61-62). This reorganization and the transfer were completely unrelated to Slimp's lawsuit. (*Id.*). Slimp's contract guaranteed her the right to interview for not less than three positions. (Doc. 18 at 23-25). Upon

completion of her three interviews, one or more of the interviewing principals could request that Slimp be placed at their school; if no principal selected her, the School Board would place her into one of the positions without the principal's consent. (Doc. 18 at 25, 37). Although Slimp's contract guaranteed that she would be placed *somewhere,* she had no right or ability to select her position. (Doc. 18 at 26-27, 37, 68).

Slimp interviewed at Mosley High School, Mowat Middle School, and Surfside Middle School. (Doc. 18 at 24, 63, 76). By Friday, September 12, 2014, Slimp's class at Everitt Middle School had been dissolved, but no principal had requested that she join their faculty. (Doc. 18 at 28, 39). All other teachers affected by the reorganization had been selected by various principals for employment. (Doc. 18 at 25-26, 28).

### b.     *Settlement Negotiations*

Rather than assign Slimp to one of these schools, the Board asked its attorney to convey an offer to settle Slimp's lawsuit in which it would allow Slimp to select her position in return for dismissal of her claims. (Doc. 18 at 28-29, 40-41). No other teacher involved in the reorganization was given this option, and neither Slimp nor the School Board's Executive Director for Human Resources,

Sharon Michalik, could recall any teacher at any time being offered the ability to select her own position. (Doc. 18 at 26-27, 63-64).

Tiffany Cruz, Slimp's counsel, responded later that afternoon and requested that Slimp be placed at Arnold High School—a position for which she had not interviewed and therefore was not being considered—and be paid $1,000 in legal costs incurred in the case to date. (Doc. 18 at 11-12, 29-30, 46). The School Board accepted those demands that same evening. (Doc. 18 at 11-12, 30, 47). Counsel for the parties agreed to reduce the agreement to writing over the weekend for execution the following week. (Doc. 18 at 12, 47).

Based upon the oral agreement, the School Board notified the principal of Arnold High School that Slimp would be reporting to work at his school on Monday morning, (Doc. 18 at 30-31), and congratulated Plaintiff in an email, stating: "Pending your signature on a settlement agreement that will be forwarded to you, you are an Arnold Marlin and [the school's principal] is thrilled to add you to his Language Arts team as an English teacher." (Defendant's Exhibit "D" from Oct. 3 Hearing at 2). Slimp responded, "Where will the contract be?" (*Id.*).

The parties exchanged drafts of the agreement over the weekend and agreed upon a final draft on Monday morning, September 15, 2014. (Doc. 18 at 12-15, 48; Docs. 10-2, 10-3). Slimp reported to work at Arnold High School that same day—a

position she still holds. (Doc. 18 at 32, 60-61). However, Slimp's counsel notified the School Board's counsel later on the 15th that "[t]here was a misunderstanding and Ms. Slimp is withdrawing her acceptance of the offer to go to Arnold HS as settlement of her lawsuit." (Doc. 18 at 16, 48-49; Doc. 10-1 at 7).

### c. *The Communications Between Slimp and Her Attorney*

#### 1. *Attorney Cruz's Testimony*

Ms. Slimp's attorney, Tiffany Cruz, testified regarding her conversations with her client about negotiating the settlement agreement. I find Cruz's testimony to be very credible, and I largely accept her account of the facts. Cruz answered questions confidently and narrated a believable and logical sequence of events.

Cruz testified that she spoke directly with Plaintiff on two occasions on September 12th regarding the settlement. (Doc. 18 at 41-42, 53). On the first, Ms. Cruz informed Plaintiff that "there's been an offer to settle your lawsuit. The offer is that you can choose from one of the positions that you have interviewed for as a resolution of your lawsuit." (Doc. 18 at 42, 44-45). Cruz further testified that Slimp specifically asked her "Why are they doing this?" Cruz responded that "[t]his will be for resolution of your lawsuit." (Doc. 18 at 43). The two then discussed which position Slimp wanted—with Slimp ultimately selecting a position at Arnold High School. Slimp did not indicate any inability to comprehend the clear words her

attorney was using. (Doc. 18 at 44). Cruz told Slimp that she would have to sign a release. (Doc. 18 at 45). Cruz also testified that although she is not a mind-reader, based on their objective exchange during the conversation she had no doubt that her client understood that this was a negotiation of the settlement of her lawsuit and that she had full authority to negotiate and settle the claim. (Doc. 18 at 45-46, 48, 59).

During their second conversation, Cruz informed Slimp that the School Board had accepted their demand and agreed to both place her at Arnold High School and to also pay her $1,000 in her legal costs incurred to date. (Doc. 18 at 53-54). During this second conversation Cruz again expressly stated to Slimp that this was for "the resolution of the lawsuit, and that the thousand dollars would cover her costs." (Doc. 18 at 53). Again, based upon the objective exchange during the conversation, Ms. Cruz then had no doubts that Slimp fully understood that she had settled her lawsuit and that all that remained was the execution of a finalized agreement. [Doc. 18 at 45-46, 48, 54, 59 ("Q. But the communication that you had with her on Friday evening was she was agreeing to resolve her lawsuit? A. Those were my words, yes.")]

### 2. *Slimp's Testimony*

To the extent that Slimp's own testimony contradicted Cruz's testimony, I find it not to be credible. Slimp, throughout her time on the witness stand, seemed unsure of herself and had difficulty remembering parts of her conversations with Ms. Cruz.

Slimp maintained that she did not understand the "legal terms" that Cruz was using, (Doc. 18 at 66), and thought that the word "settle" meant that the School Board was trying to settle her transfer to another school in a manner wholly independent to the present suit (Doc. 18 at 66-67). This contention is simply not believable because there would be no reason for her to expect her attorney, whom she retained for the purpose of bringing this lawsuit, to play a role in handling her transfer that was independent of the suit. (*See* Doc. 18 at 67 ("Q. Why would your lawyer need to call you for that? Why wouldn't [the Board] contact you? A. Because I believed that the lawyers conversed amongst themselves.")).

It is also unlikely that Slimp, a certified high school English teacher, would have so completely misunderstood Cruz's use of the word "settle" or failed to seek any clarification on its meaning, especially given the unambiguous context in which Cruz presented it. (*See* Doc. 18 at 42 ("[T]here's been an offer to settle your lawsuit. The offer is that you can choose from one of the positions that you have

interviewed for as a resolution for your lawsuit."). Likewise, it is not believable that Slimp would think that Cruz was participating in the standard reassignment process when she offered a teaching position at Arnold, a school where Slimp had not interviewed. (Doc. 18 at 24, 63, 76). Rather, Slimp's request to be transferred to Arnold, (Doc. 18 at 69), is evidence that she gave Cruz authority to negotiate on her behalf.

Furthermore, it is not believable that Slimp would have no recollection of being offered $1,000 in legal costs. (Doc. 18 at 69-70). Rather, I find that, as evidenced by Cruz's testimony, Slimp *was* aware of the $1,000 offer, and Slimp could not have credibly thought that she was being offered money for anything other than some sort of resolution of the lawsuit. [*See* Doc. 18 at 43 ("[Slimp] said, Why are they doing this? And [Cruz] said, This will be for resolution of your lawsuit.")].

I recognize that Slimp is not a lawyer, and she very well may not have fully understood the implications of settling her lawsuit and dismissing her claims with prejudice. However, her words and actions in her discussions with Attorney Cruz, as described in Cruz's very credible testimony, conveyed a clear and unequivocal authority to settle the lawsuit under the basic terms that Cruz had clearly conveyed.

### III. <u>ANALYSIS</u>

Under Florida law, the formation of a contract is evaluated under an objective standard and "depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." *Cabrera v. Outdoor Empire Inc.*, 134 So. 3d 573, 577 (Fla. Dist. Ct. App. 2014) (citations and quotations omitted). *See also Med-Star Cent., Inc. v. Psychiatric Hospitals of Hernando Cnty., Inc.*, 639 So. 2d 636, 637 (Fla. Dist. Ct. App. 1994) ("[T]he test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.") (citations and quotations omitted).

Slimp, by her actions and words, clearly and unequivocally conveyed authority to her attorney, Cruz, to negotiate and consummate a settlement under the basic terms that Cruz described—a transfer to Arnold High School, and $1,000 payment to cover legal costs. Cruz clearly described these times such that a reasonable person could understand them, and Slimp conveyed her acceptance of these terms in a way that a reasonable person would understand her to have accepted the terms. [*See* Doc. 18 at 46 ("Q. And that she understood that she would

be releasing all of her claims?A. I can only assume that she understood that from our conversation.")]. Even if, contrary to the weight of the evidence, Ms. Slimp did not fully comprehend what she was doing by authorizing her attorney to settle, her actions objectively conveyed to her attorney that she accepted the terms of the settlement and she gave her attorney authority to negotiate and finalize the agreement.

Cruz, acting in reliance on her client's words and actions, then formally negotiated the settlement with the School Board's attorney. The school board detrimentally relied on Cruz's representations of acceptance by placing Slimp in the teaching position at Arnold, a position that Slimp accepted even before she attempted to revoke her offer of settlement.

Because Slimp accepted the School Board's offer of settlement, I find that a binding and enforceable settlement agreement exists between the parties, a copy of which is contained in the record. (*See* Doc. 10-3). Any other result would produce injustice and allow Slimp to obtain a unilateral benefit to which she is not entitled.

## IV.   CONCLUSION

1. The relief requested in Defendant's Emergency Motion to Enforce a Negotiated Settlement Agreement (Doc. 10) is **GRANTED**.

2. The parties shall, not later than **October 27, 2014**, sign the settlement agreement and any other documents necessary to effect settlement.

3. This case is dismissed with prejudice from the active docket of the court.

4. In the event that the settlement between these parties is not consummated, the Court reserves jurisdiction, upon motion filed by any party within 60 days of the date of this Order, to amend or vacate and set aside this Order and reinstate the case.

5. The clerk is directed to close the file for administrative purposes, and upon the expiration of 60 days without activity, the clerk is directed to close the case in its entirety for all purposes.

    **ORDERED** on October 22, 2014.

                      /S/ Richard Smoak
                      **RICHARD SMOAK**
                      **UNITED STATES DISTRICT JUDGE**